2006 BNH 048
_____

# UNITED STATES BANKRUPTCY COURT
## for the
### DISTRICT OF NEW HAMPSHIRE

In re:                                                                    Bk. No. 05-12973-MWV
                                                                          Chapter 7
Paul A. Harris,
    Debtor


*Grenville Clark, Esq.*
GRAY, WENDELL & CLARK, P.C.
*Attorney for Debtor*

*Edmond J. Ford, Esq.*
FORD, WEAVER AND MCDONALD, P.A.
*Attorney for Michael S. Askenaizer, Chapter 7 Trustee*

*Kevin Devine, Esq.*
DEVINE & NYQUIST, P.A.
*and*
*Timothy P. Smith, Esq.*
*Attorneys for Joel B. Alvord*

*Geraldine Karonis, Esq.*
OFFICE OF THE UNITED STATES TRUSTEE
*Assistant United States Trustee*


## MEMORANDUM OPINION

        Before the Court is the issue of whether the Debtor should be permitted to amend his claim of exemptions. The Debtor filed an amended Schedule C, and a creditor and the Chapter 7 trustee filed objections thereto. Generally, amendments to schedules are freely allowed, however, the Court finds that the Debtor has acted in bad faith by undervaluing assets and concealing his use of estate property. Consequently, the objections are sustained and the exemption is disallowed.

## JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## BACKGROUND

Paul A. Harris (the "Debtor") filed a voluntary Chapter 7 petition on July 28, 2005, and filed his schedules and statement of financial affairs on August 25, 2005. On Schedule C, the Debtor claimed as exempt only "stuff," which he valued at $51,000. During an April 17, 2006, hearing on another matter, Debtor's counsel explained that a clerical error led to the wrong Schedule C being filed, and that simply claiming "stuff" as exempt was unintentional. The Debtor filed amended Schedules B and C on May 26, 2006. In both the original and amended Schedule B, the Debtor listed "Inventory, tools, & mold formerly belonging to Indoor Garden Systems, Ltd." (the "assets") as having a value of $8,600. The current controversy arises from the amended Schedule C that lists these assets as exempt. The Trustee and creditor Joel Alvord object not only to the valuation but to the exemption in general.

The assets belonged to Indoor Garden Systems, Ltd., which had been formed by the Debtor in 2003. Indoor Garden Systems developed, sold, and assembled gardening-related devices, including the StandUp Garden. The day before filing his bankruptcy petition, the Debtor foreclosed on Indoor Garden Systems's assets, making the Debtor the owner of the assets when he filed his bankruptcy petition. Thus, the assets became property of the bankruptcy estate.[1] See 11 U.S.C. § 541(a)(1). Several days post-petition, the Debtor formed a new corporation, Garden Innovations, Ltd., the business of which is

---

[1] Even if exempting the assets would remove them from being property of the estate, and even if "stuff" is construed to include the assets, the Debtor did not file his schedules until May 26, 2006, weeks after purportedly transferring the assets to Garden Innovations, which he incorporated days after filing his bankruptcy petition.

essentially identical to that of Indoor Garden Systems, i.e., producing and selling StandUp Gardens. Soon after the petition date, without seeking permission from, or even notifying, the trustee or the Court, the Debtor "transferred" the assets to Garden Innovations, his post-petition corporation, in exchange for founders stock, though the Debtor testified that this transaction is not memorialized in writing.

At the section 341 meeting, the trustee ordered the Debtor to cease liquidating the assets or using them to produce StandUp Gardens. One month later, at the April 17, 2006, hearing, the Debtor conceded that he was still actively selling StandUp Gardens produced from the assets. At that hearing, the Debtor also estimated that Garden Innovations had received approximately $85,000 in post-petition revenue generated from the Debtor's use of the assets.[2] In a previous memorandum opinion and order, this Court denied the Debtor's motion to convert to Chapter 13 because he had acted in bad faith. See In re Harris, 2006 BNH 026 (Bankr. D.N.H. 2006). The Court's finding of bad faith was partially based on the Debtor's undervaluation and secretive transfer and use of the assets, though the Debtor's bad faith extended well beyond these matters.

> The Court is unconvinced that the Debtor honestly believed the assets to have little value or that his valuation was partially based on disposal costs. . . . The Debtor has generated at least $85,000 from assets he valued at $8,600. This undervaluation and the Debtor's furtiveness in forming a new corporation a few days post-petition and transferring his assets to that corporation indicate that the Debtor had his own plans for these assets when he filed his bankruptcy petition.

Id. at 5–6.

The Court held a hearing on July 11, 2006, on the objections to the Debtor's amended exemptions. Following oral arguments, the Court took the matter under advisement and asked the parties to submit authorities supporting their positions, which they did. The Court also had the benefit of

---

[2] Mr. Alvord states in his objection his belief that the Debtor has generated at least $180,000 from his post-petition use of the assets. At the July 11, 2006, hearing, counsel for Mr. Alvord stated that it appears that the correct figure is approximately $140,000. Though the Court has not seen evidence of such figures and therefore will not make a finding that the Debtor has generated more than he admitted to, it is noteworthy that the Debtor declined to object to the statements of Mr. Alvord or his counsel. In any event, it is needless to say that $85,000 is an extraordinary sum for a Chapter 7 debtor to earn within the first nine months of filing for bankruptcy protection.

personally observing the Debtor's full-day testimony at the April 17, 2006, hearing. Although that hearing involved the Debtor's motion to convert, the Debtor's valuation, transfer, and use of the assets was examined at length.

## DISCUSSION

Bankruptcy Rule 1009(a) provides that schedules "may be amended by the debtor as a matter of course at any time before the case is closed." FED. R. BANKR. P. 1009(a). This right to amend, though, is subject to two established exceptions. "[A] bankruptcy court has discretion to deny the amendment of exemptions where the amendment would prejudice creditors or where the debtor has acted in bad faith or concealed assets." Hannigan v. White (In re Hannigan), 409 F.3d 480, 481 (1st Cir. 2005); see also Wood v. Premier Capital, Inc. (In re Wood), 291 B.R. 219, 228 (B.A.P. 1st Cir. 2003); Snyder v. Rockland Trust Co. (In re Snyder), (B.A.P. 1st Cir. 2002). "Bad faith is generally determined from an examination of the relevant surrounding circumstances" and "must be shown by clear and convincing evidence." In re Wood, 291 B.R. at 226, 228. The intentional undervaluation of an asset can give rise to a bad faith determination. See, e.g., In re Hannigan, 409 F.3d at 482 (intentional undervaluation of homestead property).

As stated above, the Court has previously found that the Debtor undervalued the assets. Whether he has generated $140,000 or only $85,000, as the Debtor testified, it is obvious that the assets are worth considerably more than $8,600. The Debtor argues that the assets are mostly lumber and it is the Debtor's know-how in assembling them that gives the assets added value. While there is likely a measure of truth to this, the Court remains unconvinced that $8,600 is an accurate valuation of the materials, especially in light of the Debtor's questionable prior statement that the $8,600 value was partly based on disposal costs.

In addition to the suspect valuation, the Debtor has concealed his use of the assets. First, the Debtor foreclosed on the inventory immediately prior to filing, upon which the inventory became

property of the bankruptcy estate.  Then, immediately after filing, the Debtor transferred, without a paper trail, the inventory to his new corporation, purportedly in return for founders stock.  He continued to use the inventory even after the trustee ordered him to stop (which the Debtor had agreed to), and he has not turned over to the estate the revenue generated from his continued use of estate property.  Now, when the trustee has attempted to liquidate the assets for the benefit of creditors, the Debtor apparently acknowledges that the assets are property of the estate that he claims are exempt.  The Debtor has tried at every turn to personally profit from these assets while at the same time seeking the protection of the Bankruptcy Code.

       The Debtor argues that this is not a case of concealing assets, as the Debtor listed the assets in his original Schedule B.  <u>See, e.g.</u>, <u>In re Wood</u>, 291 B.R. 219 (affirming denial of debtor's motion to amend exemption because debtor exhibited bad faith in not scheduling her interest in a workers' compensation settlement).  Although the Debtor scheduled the assets and may not have physically concealed them, the Debtor intentionally concealed his use of the assets.

       The Debtor also argues that the amendment simply corrects a typographical error by removing the word "stuff" from Schedule C and substituting the proper exemptions.  Although "mere carelessness or oversight would [not] be sufficient to show bad faith or concealment," <u>In re Hannigan</u>, 409 F.3d at 48, the Court is convinced that this is not a case of *mere* carelessness or oversight.  In addition to the considerations stated above, the Court also notes that the Debtor amended his schedules almost ten months after filing his bankruptcy petition—a long time to fix a glaring clerical error.  And the Debtor did not try to amend until the trustee began trying to liquidate the assets. While listing "stuff" as exempt was likely the result of carelessness or oversight, there was much more going on here than a clerical error.

**C**ONCLUSION

       The objections of Mr. Alvord and the Chapter 7 trustee are sustained; the Debtor's amendment to his claim of exemptions is disallowed with regard to the assets formerly belonging to Indoor Garden

Systems. This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

DATED this 1st day of December, 2006, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Judge